# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1223
_____

Ruby Clinkscale

*Plaintiff - Appellant*

v.

St. Therese of New Hope

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 15, 2012
Filed: November 13, 2012
_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.
_____

BYE, Circuit Judge.

Ruby Clinkscale appeals the district court's grant of summary judgment in favor of her former employer St. Therese of New Hope on her interference claim brought under the Family and Medical Leave Act (FMLA). We reverse.

I

St. Therese is a long-term care facility located in New Hope, Minnesota. From 2005 to 2010, Clinkscale worked as a nurse in St. Therese's rehabilitation unit. Despite an understanding among employees that St. Therese's nursing staff may be "floated" to different units within the facility, Clinkscale received training only for the rehabilitation unit and worked there exclusively until October 11, 2010, when she was reassigned to St. Therese's long-term care unit.

Clinkscale, who began experiencing symptoms of an undiagnosed anxiety disorder earlier in 2010, expressed apprehension about working in a unit for which she was not trained. Emphasizing that she was not refusing to work, Clinkscale merely reiterated an earlier request for unit-specific training prior to reassignment. Clinkscale's supervisors informed her that she had "no choice. You either work or you don't have a job and that's called patient abandonment and you can lose your license." Clinkscale immediately went to St. Therese's human resources (HR) office to speak with the HR Director, Rand Brugger. During their conversation, Clinkscale exhibited signs of a panic attack: crying and shaking so severely that, at one point, she requested an ambulance. In light of Clinkscale's obvious distress, Brugger instructed her to go home and said they would work something out the next day.

Once home, Clinkscale made an appointment with her doctor for the following morning, October 12. Her doctor suggested the anxiety attack had been situationally triggered, advised therapy, and prescribed two medications. In a note addressed to St. Therese, Clinkscale's doctor recommended she take the remainder of the week off from work. At 9:30 the same morning, Clinkscale delivered her doctor's note to St. Therese's HR department. In return, the HR department provided Clinkscale with FMLA forms, which she gave to her doctor to complete. Later on October 12, however, a member of St. Therese's HR staff called Clinkscale at home to inform her that she had been terminated the previous day for walking off the job. Clinkscale's

doctor returned the FMLA forms two days later, on October 14, 2012, describing Clinkscale as "suffering from anxiety and panic attacks" and requesting she be excused from work for one week due to the severity of her condition. On October 22, 2010, St. Therese registered a complaint regarding Clinkscale with the Minnesota Board of Nursing, alleging that Clinkscale had "refused work assignment & walked out."

Clinkscale filed suit against St. Therese in the District of Minnesota. Among other claims, she alleged St. Therese impermissibly interfered with her right to take reasonable leave for medical reasons in violation of the FMLA. St. Therese moved for summary judgment, arguing Clinkscale was not entitled to FMLA rights because she had no longer been an employee at the time she asserted them and, in any case, Clinkscale had been terminated for reasons "wholly unrelated to the FMLA." The district court granted summary judgment in St. Therese's favor on all claims. With respect to Clinkscale's interference claim, the court concluded St. Therese did not have notice of Clinkscale's need for medical leave prior to her termination and, alternatively, Clinkscale had been terminated for patient abandonment and not for asserting her FMLA rights. Clinkscale now appeals the district court's grant of summary judgment in favor of St. Therese on her FMLA interference claim.

II

This court reviews the district court's grant of summary judgment de novo. Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 850 (8th Cir. 2002). "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id.

The FMLA entitles an employee to twelve workweeks of leave during any twelve-month period if she has a "serious health condition that makes the employee

unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  A "serious health condition" is any "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  Continuing treatment is defined as "[a] period of incapacity of more than three consecutive, full calendar days and any subsequent treatment or period of incapacity relating to the same condition."  29 C.F.R. § 825.115(a).  Clinkscale's diagnosed incapacity for one full week, accompanied by two prescriptions for medication and an advised course of ongoing therapy satisfies the FMLA standard for a "serious health condition."  Accordingly, the district court had only to determine whether Clinkscale could establish a prima facie case of interference with her FMLA rights.

To state a claim for interference under the FMLA, Clinkscale must have given notice to St. Therese of her need for FMLA leave.  Phillips v. Matthews, 547 F.3d 905, 909 (8th Cir. 2008).  "Whether an employee gave sufficient information to put his or her employer on notice that an absence may be covered by the FMLA is a question of fact for the jury."  Id.  The district court concluded a reasonable jury could find the October 12 doctor's note was sufficient to put St. Therese on notice that Clinkscale may have had a serious health condition.  It further concluded, however, the notice had been provided too late, as Clinkscale had already been terminated when it was provided.  The FMLA establishes that when leave is needed for an unforeseeable event, notice is required "as soon as practicable."  29 C.F.R. § 825.302(a).  "This ordinarily means at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee."  Spangler, 278 F.3d at 852 (quoting 29 C.F.R. § 825.302(b)) (alterations omitted).

On October 11, Clinkscale exhibited signs of severe distress and visible manifestations of anxiety as a result of her work reassignment.  St. Therese's HR

-4-

Director instructed Clinkscale to go home and attend to her health. By 9:30 the next morning, Clinkscale had provided St. Therese with a doctor's note alerting St. Therese of Clinkscale's condition and need for medical leave. As Clinkscale argues, this notice fell well within the two-day window, and a jury could reasonably conclude it had been provided "as soon as practicable" under the circumstances.

St. Therese emphasizes, and the district court relied upon, the argument that Clinkscale was no longer an eligible employee when she put St. Therese on notice of her health condition because her supervisors construed Clinkscale's leaving as quitting. Clinkscale only left the premises, however, upon the instruction of St. Therese's own HR Director. In addition, St. Therese admits Clinkscale's supervisors and the HR staff did not discuss her allegedly voluntary termination until the morning of October 12—the same morning Clinkscale provided St. Therese with her doctor's note by 9:30 a.m. Indeed, St. Therese's response to Clinkscale's submission of her doctor's note that morning was not to inform her that she was no longer employed, but to provide her with FMLA forms. Accordingly, we believe a question of material fact remains as to whether St. Therese was on notice of Clinkscale's potentially FMLA-qualifying condition prior to its determination that her employment had ended (whether voluntarily or involuntarily).

Moreover, we held in Caldwell v. Holland of Texas, Inc., 208 F.3d 671, 677 (8th Cir. 2000),

> [a]n employer does not avoid liability by discharging an employee who takes leave in order to seek treatment for a condition that is later held to be covered by the FMLA. The employer who precipitously fires an employee, when the latter claims the benefits of leave under FMLA, bears the risk that the health condition in question later develops into a serious health condition.

St. Therese argues, and the district court concluded, that <u>Caldwell</u> is inapposite because in that case the employer granted the employee's request for leave and then terminated her before the relevant condition proved to be serious. Viewed in the light most favorable to Clinkscale, however, the facts here are comparable: St. Therese granted Clinkscale leave to attend to her mental health for the day and decided retroactively that Clinkscale had quit before she could submit paperwork the following morning to suggest she had left to seek treatment for a serious health condition. Thus, St. Therese "b[ore] the risk" that its crying, shaking and generally distraught employee requiring approved—and, in fact, instructed—leave for the day would require additional leave for what was diagnosed mere hours later as a qualifying health condition.

Assuming arguendo that Clinkscale did not voluntarily quit, St. Therese argues in the alternative that Clinkscale was terminated for patient abandonment, a reason "wholly unrelated to the FMLA." Clinkscale's supposed abandonment, however, was precipitated by a panic attack—a symptom of her anxiety disorder and the reason she required medical leave. Furthermore, Clinkscale's doctor characterized her anxiety from October 11 as situationally triggered. Combined with the fact that Clinkscale left the premises almost immediately thereafter at Brugger's direction, St. Therese cannot reasonably claim her termination bore no relation to her FMLA-qualifying condition and leave. <u>Cf.</u> <u>Phillips v. Mathews</u>, 547 F.3d 905, 911-12 (8th Cir. 2008) (employee's termination unrelated to FMLA rights where employee agreed to work prior to a midday doctor's appointment and failed to appear because her car would not start). Given the evidence suggesting a causal connection between Clinkscale's condition and her "patient abandonment," the district court erred in concluding as a matter of law that Clinkscale's "refusal to work due to a perceived lack of training is not related to a medical diagnosis of anxiety." <u>See</u> <u>Stallings v. Hussman Corp.</u>, 447 F.3d 1041, 1050 (8th Cir. 2006) ("An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason <u>connected with</u> his FMLA leave") (emphasis added).

Finally, St. Therese makes much of the fact that Clinkscale had never before suffered a panic attack to its knowledge and had not previously been diagnosed with an anxiety disorder. It notes, "Clinkscale herself did not know she suffered from 'anxiety' until she visited the doctor on October 12." While this argument may ultimately bear on a factfinder's consideration of the notice requirement, it raises a considerable policy concern. Namely, the FMLA cannot reasonably be read to provide relief only for veteran claimants whose employers may anticipate the need for medical leave. The Act itself contemplates circumstances in which the need for qualifying leave arises unexpectedly. See 29 C.F.R. § 825.302(a) (providing an alternative "as soon as practicable" notice standard). Thus, to assume an employee's previously clear medical history precludes a subsequent FMLA claim when her need for medical leave arises unexpectedly is patently unreasonable and contrary to the purpose of the Act.

For these reasons, the district court erred in concluding as a matter of law that Clinkscale could not establish an interference claim under the FMLA. Viewing the evidence in the light most favorable to Clinkscale, a reasonable jury could conclude Clinkscale satisfied the FMLA's notice requirement by providing notice of her need for medical leave "as soon as [was] practicable" or, in the alternative, that Clinkscale had been terminated for taking such leave when a serious health condition unexpectedly prevented her from fulfilling her work assignment.

III

Accordingly, we reverse the judgment of the district court.

_____