# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1852

_____

Delbert E. Hudson

*Plaintiff - Appellant*

v.

Tyson Fresh Meats, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: February 10, 2015
Filed: May 22, 2015

_____

Before BYE, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Delbert Eugene Hudson sued Tyson Fresh Meats, Inc. for wrongful termination in violation of the Family Medical Leave Act. The district court granted summary judgment to Tyson. Hudson appeals. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

On December 28, 2011, Hudson did not to come to work as a Tyson supervisor due to illness. Hudson asked his girlfriend (a Tyson employee) to report he was sick and would be out a few days. She told Hudson's supervisor, Hamdija Beganovic, that Hudson would be late or absent on December 28.

According to Hudson, he texted Beganovic before the start of his shift that he was having health issues, would be out a few days, and needed to see a doctor. Tyson's attendance policy, which Hudson had signed, states: "All management Team Members are expected to personally call their direct supervisor to report an unplanned absence or to report that they will be late." Hudson, however, claims he often texted with Beganovic, and at least once before (acceptably) notified Beganovic of an absence by text.

Hudson missed several days of work due to illness, including December 28, 29, and 30. Besides the message from his girlfriend and the text to Beganovic, Hudson did not notify Tyson of his absences. He was not scheduled to work on December 31 or January 1-2. On January 2, he saw a doctor and was diagnosed with, among other issues, back pain and depression. The doctor prescribed medication and created a follow-up plan.

On January 3, Hudson went to Tyson's health services with a doctor's note excusing him from the past week of work, as well as the coming week: "Patient Delbert Hudson has been under my care 12/28/11 to 1/7/12 for illness and was unable to work." Based on the note, Hudson requested leave from December 28-31 and January 1-7. He intended to apply for FMLA leave. He signed a "Leave of Absence Application," which has boxes for requesting "FMLA" or "Medical (Non FMLA)" leave. The non-FMLA box is checked on Hudson's application. He denies checking

-2-

it and claims someone else checked it after he signed the application. On January 4, Tyson granted Hudson non-FMLA leave.

Hudson returned to Tyson on January 9.[1] He was instructed not to go to the floor or perform his duties. That day, Human Resources manager Teri Wray investigated Hudson's absences. She interpreted his first doctor's note as excusing him from work from December 28 to January 6 (returning January 7). She determined that Hudson's girlfriend reported he would be late on December 28th, but that he did not notify Tyson of absences on December 27, 29, 30, and 31, or January 7. Wray reported, "Hudson stated that he did not call his supervisor because of the stress and pain he was enduring." She found Hudson "understands that he should have notified his supervisor" but "didn't come to work because he was feed [sic] up and felt that he wasn't getting the support he needed from Beganovic." She indicated that Hudson "had specific instructions to call-in prior to shift to his immediate supervisor if he was going to be late or miss work" and had a "similar situation" walking off the job without notice in 2011. Wray recommended Hudson's termination. Tyson approved the termination that day. It processed the termination on January 10, informing Hudson that he "failed to notify the company he was going to be absent from work on 12-28, 12-29, 12-30, and 12-31."

Hudson sued, claiming Tyson interfered with his FMLA rights and discriminated against him for taking FMLA leave. The district court granted summary judgment to Tyson. It denied Hudson's Rule 59(e) motion to alter or amend judgment, and Rule 60(b) motion for relief from judgment.

---

[1]Hudson called his doctor on January 9 asking for an extension of his work release. He received a second doctor's note, dated January 10, extending his leave through January 9. It is unclear when Hudson gave this note to Tyson. The parties do not discuss it. However, the district court found that, based on the new note, Tyson extended Hudson's leave through January 9 and did not reinstate him until January 11.

II.

The FMLA entitles an employee to twelve weeks of unpaid leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." **29 U.S.C. § 2612(a)(1)(D), (c)**. It is unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. *Id.* **§ 2615(a)(1)**. There are two types of claims under § 2615(a)(1).[2] An "entitlement" claim results when "an employee claims the denial of a benefit to which he is entitled under the statute." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012) (noting violation when "employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act"). A "discrimination" claim occurs when "an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Id.* at 1006.

Hudson brought entitlement and discrimination claims. The district court rejected both. This court reviews de novo a grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. A court "must view the evidence in the light most favorable to the opposing party" and draw all reasonable inferences in favor of that party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 1868 (2014) (per curiam) (internal quotation marks omitted).

---

[2]An employer also may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." **29 U.S.C. § 2615(a)(2)**. This type of "retaliation" claim is not at issue here. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005-06 (8th Cir. 2012). (recognizing three distinct claims under FMLA).

A.

Hudson claims that Tyson denied his exercise of FMLA rights in two ways: misclassifying his leave as non-FMLA, and failing to restore him to his position upon return from leave. *See* **29 U.S.C. §§ 2612, 2614** (noting employee is entitled to take unpaid leave for specified reasons, and to be "restored" to the same or "equivalent" position following leave). For an entitlement claim, the employee need not show any discriminatory intent by the employer. *Pulczinski*, 691 F.3d at 1005. *See also* ***Stallings v. Hussmann Corp.***, 447 F.3d 1041, 1050 (8th Cir. 2006) ("[A]n employee must show only that he or she was entitled to the benefit denied." (internal quotation marks omitted)). The employee must be prejudiced by the employer's FMLA violation. *Pulczinski*, 691 F.3d at 1006.

Hudson contends that his leave was improperly classified as non-FMLA. He does not dispute that Tyson granted leave for the requested time. He "does not allege that he was prejudiced by the misclassification of this absence. He was not denied compensation or benefits, and he has not specified any sort of equitable relief that is warranted. Without more, an allegation that a day of leave was misclassified does not entitle [Hudson] to relief." *See id.* at 1007 (internal citations omitted).

Hudson also contends that Tyson terminated him without "restor[ing]" him to the same or similar position after his leave. The district court found Hudson was restored when he returned to Tyson on January 9. However, Hudson was not permitted to work—and recommended for termination—that same day. *See* **29 C.F.R. § 825.215** (noting "equivalent position" requires "the same or substantially similar duties and responsibilities" and "the same shift or the same or an equivalent work schedule"). Tyson claims it "returned Hudson to his normal job duties for a person Human Resources was investigating," but fails to cite authority or the record. The parties agree that Hudson was terminated January 10. But the court found, "On January 11, 2012, Tyson reinstated Hudson from his leave of absence, which had

been extended to January 9, 2012, pursuant to [the doctor's] second work release, effective January 10, 2012."

There is a dispute of material fact whether Hudson was restored from leave before being terminated.[3] The district court erred in granting summary judgment to Tyson on the entitlement claim.

B.

Hudson claims that Tyson discriminated against him by firing him for taking FMLA leave. The district court found that Hudson demonstrated a prima facie case of discrimination but that Tyson had a legitimate, nondiscriminatory reason for his termination. Hudson counters that Tyson's reason is pretextual.

A discrimination claim "arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Pulczinski*, 691 F.3d at 1006. "An employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA." *Id.* Using FMLA leave "does not give an employee any greater protection against termination for reasons unrelated to the FMLA than was available before." *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088, 1090 (8th Cir. 2014). Thus, taking action against an employee for violating company attendance policies while on FMLA leave is not discriminatory. *Chappell v. Bilco Co.*, 675 F.3d 1110, 1115 (8th Cir. 2012).

---

[3]If, *after* his leave was over and *after* he was restored to his position, Tyson took adverse employment action against Hudson because he exercised FMLA rights, that is a claim for discrimination. *See Stallings*, 447 F.3d at 1051 (finding court properly analyzed claim as one for discrimination when "only after Stallings returned from FMLA leave did [his employer] question" whether the leave was fraudulent).

Hudson offers no direct evidence that Tyson terminated him for exercising his FMLA rights. Therefore, his claim is analyzed under the *McDonnell Douglas* framework. ***Pulczinski***, 691 F.3d at 1007. "To establish a prime facie case of FMLA discrimination, an employee must show: (1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." ***Id.*** (emphasis omitted). If the employee establishes a prima facie case, "the burden shifts to the [employer] to articulate a legitimate, nondiscriminatory reason for its challenged actions." ***Stallings***, 447 F.3d at 1051. The employee may then demonstrate that the proffered reason is pretextual, showing that "the employer's proffered explanation is unworthy of credence" or "persuading the court that a prohibited reason more likely motivated the employer." ***Id.*** at 1052 (brackets and internal quotation marks omitted). *See also* ***Chappell***, 675 F.3d at 1117 (noting evidence of pretext is viewed in light of employer's justification, so more than a prima facie case is required). If an employer bases its decision on an honestly-held belief unrelated to the FMLA, it is nondiscriminatory even if that belief is mistaken. ***Phillips v. Mathews***, 547 F.3d 905, 911 (8th Cir. 2008).

Tyson contends Hudson did not engage in protected activity because he provided inadequate notice of his need for leave. *See* ***Hager v. Ark. Dep't of Health***, 735 F.3d 1009, 1015-16 (8th Cir. 2013) (noting employee "must give the employer notice of the need for leave and indicate when [he] anticipates returning to work"). The district court assumed adequate notice. Disputes of fact about notice remain, including whether Hudson checked the non-FMLA box on his application and whether he sent his supervisor a text. These may or may not be material, depending on the content of the notice. *Cf.* ***Clinkscale v. St. Therese of New Hope***, 701 F.3d 825, 827 (8th Cir. 2012) ("Whether an employee gave sufficient information to put his or her employer on notice that an absence may be covered by the FMLA is a question of fact for the jury."). Given the factual issues, this court declines to affirm

on "alternative grounds that have not yet been addressed by the district court," and "believe[s] it more prudent to allow the district court to address those issues in the first instance" on remand. *See **In re Baycol Prods. Litig.***, 732 F.3d 869, 877 n.6 (8th Cir. 2013).

Assuming Hudson engaged in protected activity, he presents a prima facie case of discrimination. On the second element, Tyson concedes Hudson's termination was a materially adverse employment action. On the third, Tyson does not dispute the district court's finding: "Given the exceedingly close temporal connection between the protected conduct and the adverse employment action, Hudson has demonstrated a causal link between the protected activity and the adverse employment action." *See **Hite v. Vermeer Mfg. Co.***, 446 F.3d 858, 866 (8th Cir. 2006).

Tyson asserts a legitimate, nondiscriminatory reason for Hudson's termination: He was a "no call/no show" for multiple days. At oral argument, Tyson clarified that it did not fire Hudson for failing to show up to work, since it granted leave retroactively. Rather, it fired Hudson for "fail[ing] to follow the notice procedures . . . which required a phone call." Hudson does not dispute that violating Tyson's attendance policy would be a legitimate reason for termination unrelated to the FMLA. *See **Chappell***, 675 F.3d at 1115 (noting employer may take action when employee fails to follow call-in policy). However, Hudson contends that he gave timely and adequate notice, and that Tyson's reason for terminating him is pretextual.

There is a genuine issue of material fact whether Tyson's explanation "is unworthy of credence." ***Stallings***, 447 F.3d at 1052. Originally, Tyson claimed that it fired Hudson for "fail[ing] to notify the company he was going to be absent"; it now claims that he failed to notify the company in the correct manner. While this shift in explanation does not prove pretext, it is relevant in light of other evidence. *Cf.* ***Malloy***, 756 F.3d at 1092 (finding no inference of discrimination necessary when new

explanation was not a "substantial change in the employer's stated reason"). Tyson's explanations (both original and new) are partly inaccurate. *See Hite*, 446 F.3d at 867 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." (internal quotation marks omitted)). On December 31, Hudson was not scheduled to work. He thus did not need to notify anyone of his absence. For December 28, Wray's notes stated that Hudson *had* notified the company (although not by phone). Although Tyson argues Wray had an honestly-held belief that Hudson missed work for multiple days without notifying Tyson, it does not address that Wray's own notes and Hudson's work schedule contradict this belief. *See Stallings*, 447 F.3d at 1053 (finding pretext when employer could not reasonably believe employee lied about taking FMLA leave).

It is also disputed whether Tyson enforced its call-in policy. Hudson swore that he often texted with his supervisor, and that he had previously notified his supervisor, via text, of an absence. Although the policy says Hudson needed to call his direct supervisor, Beganovic testified that employees are "supposed to call in, just like anybody else. They're supposed to get ahold of somebody" or "notify HR"—the policy didn't require calling a "specific person." The trier of fact may infer that firing Hudson for failing to call his supervisor, when other methods of communication are acceptable, is pretext. *Compare Hite*, 446 F.3d at 868 (noting jury could have found that employer's reason had no basis in fact if it credited the employee's testimony), *with Chappell*, 675 F.3d at 1118 (concluding termination for failing to follow call-in policy was not discriminatory, when other employees were also disciplined for violating that policy). Hudson has presented sufficient evidence to raise a genuine issue of fact that he adequately notified Tyson and was actually terminated based on his use of FMLA leave. *See Tolan*, 134 S. Ct. at 1866 ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." (internal quotation marks omitted)).

* * * * * * *

The judgment is reversed and the case remanded for proceedings consistent with this opinion.

_____

-10-